[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Shelly Materials, Inc. v. Streetsboro Planning & Zoning Comm.,* Slip Opinion No. 2019-Ohio-4499.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-4499

SHELLY MATERIALS, INC., APPELLANT, *v*. THE CITY OF STREETSBORO PLANNING AND ZONING COMMISSION ET AL., APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Shelly Materials, Inc. v. Streetsboro Planning & Zoning Comm.,* Slip Opinion No. 2019-Ohio-4499.]

*Zoning—Surface mining as a permitted conditional use—Administrative appeals— R.C. 2506.04—Standard of review applicable to court of appeals' review of decision of common pleas court in R.C. Chapter 2506 administrative appeal—Court of appeals in an administrative appeal may not reweigh the evidence.*

(No. 2018-0237—Submitted March 26, 2019—Decided November 5, 2019)

APPEAL from the Court of Appeals for Portage County, No. 2017-P-0025, 2017-Ohio-9342.

_____

STEWART, J.

{¶ 1} The questions raised in this appeal concern the scope of review conducted by a court of appeals in an R.C. Chapter 2506 administrative appeal. For the reasons that follow, we conclude that the Eleventh District Court of Appeals exceeded its scope of review in this case and we accordingly reverse the judgment of the court of appeals and remand the cause to that court for further consideration consistent with this opinion.

**Facts and Procedural History**

{¶ 2} Appellant, Shelly Materials, Inc. ("Shelly"), entered into a mineral-rights lease in 2015 for an approximately 225-acre horse-farm property, commonly called Sahbra Farms, located in the city of Streetsboro ("the city"). The property is zoned "R-R, Rural Residential District," and at the time, surface mining was allowed as a conditional use in a rural-residential district upon the approval of an application for a conditional-use permit. Shelly leased the mineral rights of the Sahbra Farms land to engage in surface mining of sand and gravel. When Shelly entered into the lease, surface mining had been conducted on an adjacent property by a different company for a number of years as a permitted conditional use.

{¶ 3} Some city residents became aware of Shelly's plan to convert the horse farm into a mining operation and, under the name "Stop Sahbra Dig," submitted an application to amend the city's zoning code to remove surface mining as a conditional use in all districts where it was permitted, including in a rural-residential district. The city's planning and zoning director, an appellee in this case,[1] agreed with the residents and recommended to appellee Streetsboro Planning and Zoning Commission that surface mining no longer be permitted as a conditional use in any district. The commission then recommended that Streetsboro City Council pass an ordinance to remove surface mining from the zoning code, and city council eventually voted to do so. But because Shelly filed its application for a

---

1. The third appellee in this case is the city's zoning inspector.

conditional-use permit to engage in surface mining before the ordinance took effect, the parties agree that the ordinance amending the zoning code may not be applied retroactively in this case.

{¶ 4} The commission conducted three hearings on Shelly's application, after which it unanimously issued written findings of fact and conclusions of law ultimately determining that "Shelly did not establish by clear and convincing evidence that Shelly's proposed conditional use met the relevant standards outlined in the Streetsboro Codified Ordinances necessary for the issuance of a conditional use permit." Streetsboro Codified Ordinance 1153.03 sets forth the requirements an applicant must meet to obtain a conditional-use permit:

(a) The applicant shall be required to establish by clear and convincing evidence that the general standards of this Zoning Ordinance and this Chapter and the specific standards pertinent to each proposed use shall be met for the proposed use provided further that any requirements of this Zoning Ordinance for permitted use(s) within a district shall be applicable to any conditional use unless otherwise stated herein.

(b) The Planning and Zoning Commission shall determine if the proposed use complies with these regulations and shall insure [sic] that the specific standards and requirements of this Zoning Ordinance pertinent to the proposed use shall be satisfied.

(c) General Standards. The Planning and Zoning Commission shall review the particular facts and circumstances of each proposed use in terms of the following standards and shall find adequate evidence showing that such use of the proposed location:

(1) Will be harmonious with and in accordance with the general objectives or with any specific objective of the Streetsboro Development Policy Plan of current adoption;

(2) Will be designed, constructed, operated and maintained so as to be harmonious and appropriate in appearance with the existing or intended character of the general vicinity and that such use will not change the essential character of the same area;

(3) Will not be hazardous or disturbing to existing or future neighboring uses;

(4) Will not be detrimental to property in the immediate vicinity or to the community as a whole;

(5) Will be served adequately by essential public facilities and services such as highways, streets, police and fire protection, drainage structures, refuse disposal, and school; or that the persons or agencies responsible for the establishment of the proposed use shall be able to provide adequately any such service[;]

(6) Will have vehicular approaches to the property which shall be so designed as not to create an interference with traffic on surrounding public streets or roads.

(Underlining sic.)

{¶ 5} Among other conclusions, the commission stated that "Shelly's proposed use would be detrimental to the properties in the immediate vicinity as a whole and, thus, constitute[s] a substantial negative effect on neighboring property values." In reaching this conclusion, the commission rejected an opinion offered by Shelly's certified real-estate appraiser that surface mining would not adversely affect the value of property located near the proposed surface mine, concluding that the appraiser's analysis was flawed because it contained "incongruent real estate

comparisons." The commission also stated that the appraiser's testimony "showed that the value of four out of five homes in Streetsboro would likely suffer if Shelly's proposed use were to operate in its proposed location."

{¶ 6} Shelly filed an R.C. Chapter 2506 appeal in the Portage County Court of Common Pleas. The court referred the case to a magistrate, who issued a decision that contained findings of fact and conclusions of law. The magistrate concluded that the commission had made its determinations under the provisions of the zoning code not based on admissible and probative evidence but on subjective public-opinion comments that property values near the proposed use would be adversely impacted. The magistrate concluded that Shelly had offered "evidence" in the form of the opinion and report of a certified real-estate appraiser, while the commission had relied only on what the magistrate characterized as "unsubstantiated speculation about detrimental impact on property values" from sources that included nonexpert testimony from the city's planning and zoning director. With the city having offered no "competent testimony from a witness qualified to render opinions about property values," the magistrate concluded that the city planning and zoning director's "unsubstantiated speculation is outweighed by the evidence from [Shelly's appraiser] as a matter of law." The magistrate further ultimately determined that Shelly had carried its burden of proof as to all six requirements in Streetsboro Codified Ordinance 1153.03(c).

{¶ 7} The court of common pleas adopted the magistrate's decision over the city's objections, concluding that the commission acted arbitrarily and capriciously by denying Shelly's application for a conditional-use permit. The court held that the commission's denial of the application "is unsupported by the preponderance of substantial, reliable, and probative evidence." The court also determined that the commission's denial of the application was "arbitrary and capricious," because the commission had reviewed it in light of the city's recent zoning change to prohibit surface mining. The court stated that it was "probable" that the application "would

not have ever been approved, given the prevailing position of the City and residents that surface mining is not in keeping with the Master Plan," even though the city "had the opportunity for nearly *two years*" prior to the filing of the application to amend the zoning code to remove surface mining as a conditional use. (Emphasis sic.) The court of common pleas thus determined that "[t]he underlying motivation to deny the conditional use application emerges as a desire to deny all surface mining as a conditional use, rather than because [Shelly] failed to satisfy the standards set forth in" the city's zoning code.

{¶ 8} A divided panel of the Eleventh District Court of Appeals reversed the judgment of the court of common pleas. The majority found the issue regarding the fourth of the city zoning code's six criteria for granting a conditional-use permit—whether Shelly's proposed use would be detrimental to property in the immediate vicinity or to the community as a whole, Streetsboro Codified Ordinance 1153.03(c)(4)—to be "dispositive," 2017-Ohio-9342, 104 N.E.3d 1, ¶ 32 (11th Dist.), and it accordingly did not address any other "separate issues" asserted in the appeal, *id.* at ¶ 15, including arguments that the commission had correctly determined that Shelly had failed to satisfy other provisions of Streetsboro Codified Ordinance 1153.03(c) and additional arguments that went to other matters.

{¶ 9} After acknowledging that Shelly's expert "had 30 years of experience as an appraiser and had submitted a 76-page report in support of his opinion," *id.* at ¶ 33, the majority nonetheless decided that the commission could have justifiably concluded that Shelly's expert lacked credibility, because he had "acknowledged that the comparison properties utilized to form his opinion were further away from the surface mine than the properties at issue," *id.* at ¶ 36. In addition, the majority stated that the expert had "acknowledged that some of the properties in the comparison group were probably separated from mining operations by natural buffers, such as woods, furthering [sic] distinguishing the comparison properties from the properties at issue." *Id.* After concluding that the commission had been

justifiably entitled to reject the expert's opinion, the majority held that Shelly had failed to carry its burden to obtain the conditional-use permit. *Id*. at ¶ 37.

{¶ 10} We accepted jurisdiction over Shelly's appeal, 152 Ohio St.3d 1478, 2018-Ohio-1990, 98 N.E.3d 294, to consider three propositions of law:

> 1. An administrative decision that is unconstitutional, illegal, arbitrary, capricious, or unreasonable, cannot be affirmed simply because it is supported by the preponderance of the evidence, nor can an unsupported decision be affirmed simply because it is not illegal or arbitrary; rather, a common pleas court must reverse if it finds any one of the statutory grounds for reversal of an administrative decision.
>
> 2. It is the proper function of the court of common pleas in an appeal under Ohio Revised Code 2506.01 to evaluate the character of evidence to determine if it was "substantial, reliable, and probative."
>
> 3. It is not the function of a court of appeals in an appeal under Ohio Revised Code 2506.01 to review the common pleas court's judgment de novo, but its review under R.C. 2506.04 is limited to "questions of law." R.C. 2506.04.

## Analysis

{¶ 11} Shelly's principal argument is that the court of appeals exceeded the narrow scope of its review and conducted a de novo review of the commission's findings by substituting its judgment for that of the common pleas court with respect to the "dispositive" issue—whether the commission erred by finding that Shelly's expert lacked credibility.

{¶ 12} Decisions of administrative agencies are directly appealable to a court of common pleas. A common pleas court has jurisdiction to review final orders issued by "any officer, tribunal, authority, board, bureau, commission, department, or other division of any political subdivision of the state." R.C. 2506.01(A). Acting as an appellate court, the common pleas court "may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record." R.C. 2506.04. These grounds for reversal are set forth in a disjunctive list, so each ground must be read to have a distinct meaning. *See Freedom Rd. Found. v. Ohio Dept. of Liquor Control*, 80 Ohio St.3d 202, 205, 685 N.E.2d 522 (1997). The presence of any one of the six grounds listed in R.C. 2506.04 will therefore by itself justify a court of common pleas' reversal of an administrative order.

{¶ 13} We have said that the scope of review for a common pleas court in an R.C. Chapter 2506 administrative appeal is not de novo but that the appeal " 'often in fact resembles a *de novo* proceeding.' " *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34, 465 N.E.2d 848 (1984), quoting *Cincinnati Bell, Inc. v. Glendale*, 42 Ohio St.2d 368, 370, 328 N.E.2d 808 (1975). "The court weighs the evidence to determine whether a preponderance of reliable, probative, and substantial evidence supports the administrative decision, and if it does, the court may not substitute its judgment for that of" the administrative agency. *Independence v. Office of the Cuyahoga Cty. Executive*, 142 Ohio St.3d 125, 2014-Ohio-4650, 28 N.E.3d 1182, ¶ 13. The court of common pleas may not "blatantly substitute its judgment for that of the agency, especially in areas of administrative expertise." *Dudukovich v. Lorain Metro. Hous. Auth.*, 58 Ohio St.2d 202, 207, 389 N.E.2d 1113 (1979). Nevertheless, the court of common pleas has "the power to examine the whole record, make factual and legal determinations, and reverse the [administrative agency's] decision if it is not supported by a preponderance of substantial, reliable,

and probative evidence." *Cleveland Clinic Found. v. Cleveland Bd. of Zoning Appeals*, 141 Ohio St.3d 318, 2014-Ohio-4809, 23 N.E.3d 1161, ¶ 24, citing *Dudukovich* at 207.

{¶ 14} When considering Shelly's application for a conditional-use permit, the commission reviewed the standards set forth in Streetsboro Codified Ordinance 1153.03(c), including that the conditional use "[w]ill not be detrimental to property in the immediate vicinity or to the community as a whole," Streetsboro Codified Ordinance 1153.03(c)(4). Addressing this standard, the commission determined that "[t]he appraisal data offered by Shelly's real estate appraiser did not reflect a valid comparison between the subject property and neighboring properties and the properties used in the appraiser's report." For this reason, the commission concluded that "Shelly's real estate appraiser's testimony was flawed and contained incongruent real estate comparisons" and that the "appraiser's testimony showed that the value of four out of five homes in Streetsboro would likely suffer if Shelly's proposed use were to operate in its proposed location."

{¶ 15} The court of common pleas determined that the commission had erroneously focused on the expert's sales data for particular houses, as opposed to his opinion that surface-mining operations would have no adverse effect on property values for the community as a whole. The court, quoting Streetsboro Codified Ordinance 1153.03(c)(4), stated that "the proper test is not the unsubstantiated speculation regarding the sale of any particular house; the test is whether the use will be 'detrimental to property in the immediate vicinity or to the community as a whole.' " In considering the impact that Shelly's mining operations would have on the community as a whole, Shelly's expert testified before the commission that he had found no recent sales that he could use for comparison that involved houses adjacent to property where mining operations were currently being conducted on land that had shortly before been used for a farm-type purpose. For that reason, he expanded his analysis to cover 12 house

sales that had occurred since 2014 in the city and two neighboring townships that also had active surface-mining operations, stating that all of the houses were in relatively "close proximity" to nearby mining operations. The expert testified that he had employed a methodology in which he "analyzed a distance from an existing ongoing gravel and sand operation to the actual property that sold and tried to analyze those particular sales to the average sales in the local neighborhood to see if there's any measurable effect." After comparing 24 indicators, the expert in his appraisal report concluded that "the majority of indicators show no effect for being near an active gravel quarry. It is possible that unique locations of a residential property could be impacted by gravel extraction activities, but as a whole general property values show limited effect based on close proximity." The expert thus concluded that there was "little to no conclusive evidence" to show that sales of property in close proximity to surface-mining operations were adversely affected.

{¶ 16} The city's planning and zoning director, who by his own admission was "not an appraiser," testified before the commission that Shelly's application should be denied, in part because of the proposed mining operation's effect on property values. The director stated his opinion that there were "shortcomings" in Shelly's expert appraiser's analysis and explained what he viewed those shortcomings to be. The court of common pleas concluded that the planning and zoning director was not qualified to render an opinion about property appraisals and that the director's "unsubstantiated speculation is outweighed by the evidence from [Shelly's expert] as a matter law."

{¶ 17} A party who disagrees with a decision of a court of common pleas in an R.C. Chapter 2506 administrative appeal may appeal that decision to the court of appeals but only on "questions of law." R.C. 2506.04. For this reason, we have stated that under R.C. 2506.04, an appeal to the court of appeals is "more limited in scope" than was the appeal to the court of common pleas. *Kisil*, 12 Ohio St.3d at 34, 465 N.E.2d 848; *see id.* at 34, fn. 4. While the court of common pleas is

required to examine the evidence, the court of appeals may not weigh the evidence. *Independence*, 142 Ohio St.3d 125, 2014-Ohio-4650, 28 N.E.3d 1182, at ¶ 14. Apart from deciding purely legal issues, the court of appeals can determine whether the court of common pleas abused its discretion, which in this context means reviewing whether the lower court abused its discretion in deciding that an administrative order was or was not supported by reliable, probative, and substantial evidence. *Boice v. Ottawa Hills*, 137 Ohio St.3d 412, 2013-Ohio-4769, 999 N.E.2d 649, ¶ 7, citing *Kisil* at 34.

{¶ 18} The Eleventh District reversed the judgment of the court of common pleas on the grounds that the commission had a justifiable reason to reject Shelly's expert's opinion, because "the comparison properties utilized to form his opinion were further away from the surface mine than the properties at issue." 2017-Ohio-9342, 104 N.E.3d 1, at ¶ 36. This was not a question of law for the court of appeals to decide in an administrative appeal under R.C. 2506.04; it was a question concerning the weight of the evidence to be given to the expert's opinion.

{¶ 19} The Eleventh District concluded that Shelly's expert's failure to use appropriate comparables when offering his opinion that Shelly's operations would not be detrimental to property in the immediate vicinity was, in essence, a complete failure of proof pursuant to Streetsboro Codified Ordinance 1153.03(c)(4). Experts are not required to give precise opinions, but an expert's opinion is normally offered to a reasonable degree of certainty within the expert's field. *See State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 162. To be sure, an expert's opinion may not be based on "mere possibility or speculation," *id.*, but when an expert's opinion on the value of real estate is based on "comparables" because there is no recent arms-length sale of the property in question, the appraisal will be based on a professional's judgment that the property will sell for a price consistent with prices for similar and similarly situated properties. Absolute certainty in land appraisals is not required, nor is it even possible, in most cases.

*United States v. Glanat Realty Corp.*, 276 F.2d 264, 266 (2d Cir.1960) ("the decisions are full of expressions recognizing that land value almost always depends upon the hypothetical opinions of those generally familiar with transactions in the neighborhood").

{¶ 20} In fact, at least one commission member during one of the hearings before the commission acknowledged the difficulty of obtaining direct comparisons of houses for purposes of appraisal when he questioned Shelly's expert appraiser:

[Commission member:] Did you find any comps at all—I grant you this would probably be very difficult—where you had property that was not already adjacent to a surface mine but rather was adjacent to a very pastoral, horse-farmish looking land and then became a surface mine and what would happen to the value of those farms?

[Shelly's expert:] Unfortunately not. I could not find—

[Commission member:] That's nearly impossible, I grant you.

{¶ 21} Given that the lack of comparable properties near the location of the proposed surface mine made it difficult to ascertain whether mining operations would be detrimental to property in the immediate vicinity, the opinion of an expert appraiser was important. No objections were made to Shelly's expert's qualifications to render an opinion, so the validity of his appraisal was ultimately a matter of credibility for the commission to determine. *See Kokitka v. Ford Motor Co.*, 73 Ohio St.3d 89, 92, 652 N.E.2d 671 (1995). The court of common pleas, acting within the scope of its review under R.C. Chapter 2506, weighed the expert's opinion differently than the commission. The court of appeals had no authority to second-guess the decision of the court of common pleas on questions going to the

weight of the evidence supporting the commission's findings. We accordingly reverse the judgment of the court of appeals on the only issue it addressed.

{¶ 22} The dissenting opinion criticizes us for not addressing the court of appeals' holding that that the trial court erred by putting the burden of proof on the wrong party. No additional discussion is necessary—in its decision adopting the magistrate's decision, the trial court stated:

> A review of the record indicates that [Shelly] presented clear and convincing evidence during the Commission hearings relative to the general standards, the specific standards as to surface mining, and the specific objectives of the Master Plan. The Court finds that the Commission's decision to deny the conditional use application is unsupported by the preponderance of substantial, reliable, and probative evidence.

{¶ 23} Without question, the trial court properly recognized that Shelly had the burden of proving its entitlement to the conditional-use permit by clear and convincing evidence and that it had met that burden of proof. Indeed, the court of appeals recognized the same thing, stating that "[t]he flaw is that the magistrate fails to recognize that [Shelly] has the burden, *and provided [the expert's] testimony lacks credibility*, [Shelly] fails" (emphasis added), 2017-Ohio-9342, 104 N.E.3d 1, at ¶ 34. The court of appeals thus recognized that if the expert's testimony was credible, Shelly would have carried its burden of proof.

{¶ 24} The dissent also asserts that the magistrate did not use the correct standard of review and that the trial court's "conclusory recitation of the zoning ordinance's requirements" cannot "magically turn the magistrate's obvious application of the wrong legal standard into something that passes legal muster." Dissenting opinion at ¶ 38. This assertion improperly elevates a magistrate's

decision over a judgment issued by a trial judge. "Civ.R. 53 places upon the *court* the ultimate authority and responsibility over the [magistrate's] findings and rulings." (Emphasis sic.) *Hartt v. Munobe*, 67 Ohio St.3d 3, 5, 615 N.E.2d 617 (1993). Thus, we have held that a trial court "has the responsibility to critically review and verify to its own satisfaction the correctness of [a magistrate's decision]." *Normandy Place Assocs. v. Beyer*, 2 Ohio St.3d 102, 105, 443 N.E.2d 161 (1982). It is for this reason that Civ.R. 53(D)(4)(b) gives the trial court the authority to "adopt or reject a magistrate's decision in whole or in part, with or without modification." And we emphasize that a magistrate's decision is not effective "unless adopted by the court." Civ.R. 53(D)(4)(a). To assert that the magistrate erred is to create a straw man: it makes no difference if the magistrate used the wrong standard of review; what is important is that the trial court used the correct standard of review.

{¶ 25} The Eleventh District determined that its resolution of the issue regarding Streetsboro Codified Ordinance 1153.03(c)(4) was dispositive of the appeal, obviating the need for it to consider any of the various other issues raised by the commission and the two city officials in their appeal from the decision of the court of common pleas. Because those issues that were not addressed should be resolved by the Eleventh District in the first instance, we remand this cause to the court of appeals for further consideration consistent with this opinion.

Judgment reversed
and cause remanded.

KENNEDY and DONNELLY, JJ., concur.

FISCHER, J., concurs in judgment only.

DEWINE, J., dissents, with an opinion joined by O'CONNOR, C.J., and ZIMMERMAN, J.

WILLIAM ZIMMERMAN, J., of the Third District Court of Appeals, sitting for FRENCH, J.

———————————

**DEWINE, J., dissenting.**

{¶ 26} Let's review what happened here. The City of Streetsboro passed an ordinance allowing surface mines if the mine operator can show by clear and convincing evidence that the mine will satisfy certain standards. Among those standards is that the mine "[w]ill not be detrimental to property in the immediate vicinity or to the community as a whole." The Streetsboro Planning and Zoning Commission reviewed an application for a conditional-use permit and found that the company failed to meet this burden. But the court of common pleas overturned the commission's decision on the grounds that *the commission* had not provided sufficient evidence justifying its rejection of the application. And the court of appeals reversed, rightly noting that this put the burden on the wrong party, and reinstated the commission's decision.

{¶ 27} Nevertheless, a majority of this court today reverses the court of appeals. In doing so, the lead opinion neither analyzes whether Shelly Materials provided clear and convincing evidence that it satisfied the ordinance's requirements nor addresses the failure of the trial court to actually apply that standard. Instead, the lead opinion asserts that the obvious error in the magistrate's analysis—which was adopted by the court of common pleas—can be ignored because of the trial court's conclusory recitation of the proper standard of review under the zoning ordinance. In short, the lead opinion disregards the evidentiary standard in the city ordinance that the commission was lawfully required to apply. It thereby effectively robs Streetsboro of the right to set the standards for granting a conditional-use permit.

*The court of common pleas did not apply the right standard in reviewing the commission's decision*

{¶ 28} The determinative question in this case is what standard the court of common pleas should have applied in reviewing the commission's decision. On

review of an administrative agency's decision under R.C. 2506.04, "the Court of Common Pleas must weigh the evidence in the record, and whatever additional evidence may be admitted pursuant to R.C. 2506.03, to determine whether there exists a preponderance of reliable, probative and substantial evidence to support the agency decision." *Dudukovich v. Lorain Metro. Hous. Auth.*, 58 Ohio St.2d 202, 207, 389 N.E.2d 1113 (1979).

{¶ 29} A complicating feature here is that the zoning ordinance imposes a "clear and convincing" evidentiary standard. That is, under the ordinance, an applicant must provide clear and convincing evidence that the proposed use will satisfy each of six requirements. Streetsboro Codified Ordinance 1153.03. The commission is legally bound to apply the terms of the zoning ordinance, including any evidentiary standard contained therein. Hence, if a reviewing court is to assess the commission's decision, as required by R.C. 2506.04, it must ask whether the commission applied the terms of the zoning ordinance, including the evidentiary burden. As a result, when the zoning ordinance imposes a clear-and-convincing-evidence requirement, the court of common pleas must, at a minimum, ask whether the petitioning entity provided evidence of that quality.

{¶ 30} Here, nothing in the court of common pleas' decision assesses whether Shelly Materials had provided clear and convincing evidence that the proposed use would not "be detrimental to property in the immediate vicinity or to the community as a whole" under Streetsboro Codified Ordinance 1153.03(c)(4). The magistrate's conclusions—adopted by the court of common pleas—first stated that the commission's findings were supported only by "unsubstantiated speculation about detrimental impact on property values, not by substantial probative evidence, and not by expert testimony." The magistrate reached this conclusion by entirely discounting the opinion of Streetsboro Planning and Zoning Director John Cieszkowski. Thus the magistrate concluded that the commission's positive evidence (Cieszkowski's opinion) was "outweighed by the evidence from

16

Mr. Bidwell [Shelly Materials' expert appraiser] as a matter of law." In essence, the magistrate reasoned that Shelly Materials provided some evidence and the commission provided no credible competing evidence and hence, Shelly Materials wins. That analysis might work if the burden was a preponderance of the evidence. But, as I've explained, if the evidentiary burden set forth in the zoning ordinance is not to be rendered a nullity, the court of common pleas should have asked whether Shelly Materials provided clear and convincing evidence.

{¶ 31} Clear and convincing evidence is "that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954). When a party must provide clear and convincing evidence, the other party need not provide any competing evidence at all. Weak evidence can fail to be clear and convincing even in the absence of competing evidence. By implying that the commission had to provide some competing evidence and by failing to assess the quality of the evidence in the record to determine whether it was clear and convincing, the magistrate applied the wrong standard and improperly placed a burden on the commission to present competing evidence. As the court of appeals correctly noted, "the magistrate fails to recognize that [Shelly Materials] has the burden, and provided Bidwell's testimony lacks credibility, [Shelly Materials] fails." 2017-Ohio-9342, 104 N.E.3d 1, ¶ 34. This is right, of course, because evidence that lacks credibility is, by definition, not clear and convincing.

*The evidence presented to the commission*

{¶ 32} The lead opinion claims that the court of appeals erred by second-guessing the court of common pleas' decision on questions regarding the weight of the evidence. But that mischaracterizes both what the court of appeals did and what the record here shows. To see why, let's review the record.

**{¶ 33}** Shelly Materials' evidence regarding detrimental effects on properties in the immediate vicinity came from its appraiser, Paul Bidwell. Bidwell provided an analysis based on the sales of 12 comparator properties that were chosen based on proximity to surface mines. He initially opined that there would be "no adverse effect" on property values in the immediate vicinity. But he almost immediately qualified this conclusion. First, he conceded that many of the comparator properties were much farther away from a mining site than the properties at issue here would be and that some of the comparators had natural buffers insulating them from the mine site. In other words, he admitted that many of the "comparables" weren't particularly useful in assessing the effect of a mine on properties adjacent to the site. And he later clarified that his evidence did not show that there would be no adverse effect. Rather, it only failed to show that there would be an adverse effect. As Bidwell put it, "based on the information I have, I can't conclude one way or another" about the effect of the mine on the value of the closest homes, "but I can say that there is not evidence to show a specific adverse effect based on what I studied." And he later further clarified that "even though the immediate properties in the area potentially could have or see some possible effect, the general area on which I'm concentrating for this conditional use permit * * * is not conclusive for an adverse effect."

**{¶ 34}** Note what's happened here. Bidwell first opined that there would be no adverse effect on nearby properties. This is the one line picked up by the magistrate. But when one reads on, it is clear that Bidwell thought only that his evidence failed to show an adverse effect. That's hardly a relevant result if one is tasked with assessing whether there is clear and convincing evidence that there will be no adverse effect. As the saying goes, the absence of evidence is not evidence of absence.

*The lead opinion makes the same mistake as the court of common pleas*

{¶ 35} The lead opinion claims that the court of appeals had "no authority to second-guess the decision of the court of common pleas on questions going to the weight of the evidence supporting the commission's findings." Lead opinion at ¶ 21. By framing the issue as one of "second-guessing" the decision of the court of common pleas regarding the weight of the evidence, the lead opinion commits two errors. First, based on the record, the court of appeals didn't have to reweigh Bidwell's testimony—it merely had to take Bidwell at his word. Bidwell admitted that his evidence failed to show that the mine would not have detrimental effects on neighboring properties.

{¶ 36} Second, when the evidentiary burden is clear and convincing evidence, a reviewing court must "examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990); *Ford v. Osborne*, 45 Ohio St. 1, 3, 12 N.E. 526 (1887). And it must assess whether the requisite quantum of evidence was produced, which, we have said, is " 'in essence' " a legal question. *Kisil v. Sandusky*, 12 Ohio St.3d 30, 35, 465 N.E.2d 848 (1984), quoting *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 111, 407 N.E.2d 1265 (1980). The lead opinion, like the court of common pleas, fails to assess whether Shelly Materials met the burden of providing clear and convincing evidence.

{¶ 37} The lead opinion goes to some length to explain that experts are "not required to give precise opinions" and to highlight the difficulty of finding good comparable properties that can be used to accurately assess the effect of a mine on property values. Lead opinion at ¶ 19. Fine, but the ordinance requires clear and convincing evidence, and we cannot ignore that requirement. The fact that it may be difficult to locate good comparable properties cannot excuse a party from meeting its evidentiary burden.

{¶ 38} The magistrate patently applied the wrong standard. The common pleas judge adopted the magistrate's reasoning without any independent analysis about the disputed provisions in the ordinance. The lead opinion seems to believe that the common pleas court's conclusory recitation of the zoning ordinance's requirements can magically turn the magistrate's obvious application of the wrong legal standard into something that passes legal muster. I disagree.

{¶ 39} The court of appeals would have reinstated the commission's decision. Because I believe that it is procedurally best to allow the court of common pleas to apply the correct standard in the first instance, I would remand this case to the trial court for it to apply the correct standard and determine whether Shelly Materials met its burden of providing clear and convincing evidence that the proposed use would satisfy all six standards under the zoning ordinance.[2] Because a majority of the court sees things differently, I respectfully dissent.

O'CONNOR, C.J., and ZIMMERMAN, J., concur in the foregoing opinion.

_____

Eastman & Smith, Ltd., Reginald S. Jackson Jr., Brian P. Barger, and Barry W. Fissel, for appellant.

Sutter O'Connell Co., Robert E. Cahill, and Matthew C. O'Connell, for appellees.

Brady, Coyle & Schmidt, Ltd., and Margaret G. Beck, urging reversal for amici curiae Ohio Chamber of Commerce; NAIOP of Ohio, Inc.; National Federation of Independent Business; Ohio Chemistry Technology Council; Ohio Aggregates and Industrial Minerals Association; National Stone, Sand and Gravel

---

2. Shelly Materials claims that the commission's decision should also have been overturned on the grounds that the commission had an improper motive. But what Shelly Materials fails to realize is that even if the commission had an improper motive, that does not automatically mean that the permit should have been granted. Shelly Materials was required to provide clear and convincing evidence to obtain a conditional-use permit. Whether it did so is something that our law requires the court of common pleas to assess. It did not do so, and hence, we should remand for a proper assessment.

Association; Flexible Pavements of Ohio; Ohio Ready Mixed Concrete Association; Ohio Forestry Association; Ohio Home Builders Association; and Ohio Contractors Association.

_____