[Cite as *Simpson v. Cleveland*, 2019-Ohio-5334.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| JACQUELINE SIMPSON, ET AL., | : | |
| Plaintiffs, | : | |
| | | Nos. 107820 and 108447 |
| v. | : | |
| CITY OF CLEVELAND BOARD OF ZONING APPEALS, ET AL., | : | |
| | : | |
| Defendants-Appellees. | : | |
| | : | |
| [Appeal by Jeanne Carney-Hagan | | |
| | : | |
| Plaintiff-Appellant.] | | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 26, 2019

Administrative Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-18-893247

*Appearances:*

Nee Law Firm, L.L.C., Matthew M. Nee, and Leigh S. Prugh, *for appellant.*

Barbara A. Henry, Director of Law, and Carolyn M. Downey, Assistant Director of Law, *for appellee* City of Cleveland.

Mansour Gavin, L.P.A., John W. Monroe, Tracey S. McGurk, and Kathryn E. Webber, *for appellee* Dieter Sumerauer.

ANITA LASTER MAYS, J.:

{¶ 1} Defendant-appellant Jeanne Carney-Hagan ("Carney-Hagan") appeals the trial court's decision to affirm the Cleveland Board of Zoning Appeals' ("the BZA") decision to grant a variance to their neighbor, plaintiff-appellee, Dieter Sumerauer ("Sumerauer"). Pursuant to App.R. 3(B), we have consolidated the two appeals for the purpose of disposition, as they contain the same facts and issues. We affirm the trial court's decision in both appeals.

## I. Facts and Procedural History

{¶ 2} When Sumerauer purchased his home, it did not include a garage on the property. Consequently, Sumerauer applied for a zoning variance to permit construction of a new building on his property that included a 3-car garage with a second floor study and living suite. The new building would consist of approximately 2,100 additional square footage. The previous garage[1] did not violate any setback requirements and did not require a variance. However, the proposed structure required a variance due to its height. The new structure required a setback of 31 feet. The additional living space pushed the garage within five feet of the property line.

{¶ 3} The BZA held a hearing on Sumerauer's variance request. Sumerauer argued that he needed approval for the variance because it was difficult to comply with the current building code due to the irregular shape of the lot. Sumerauer

---

[1] The prior owner demolished the previous garage.

acknowledged that he could build the garage on the opposite side of the house within code regulations, but it would block views of the lake on his street.

{¶ 4} Several neighbors opposed the variance arguing:

1.  The massive addition/suite was not consistent with single-family residence zoning because it was the equivalent of a new dwelling * * * a second dwelling, on a home that is zoned for single family;

2.  There was no practical difficulty requiring the construction of such a large, multi-room addition with a substantially larger, 3-car garage, rather than simply re-building a smaller garage as originally configured;

3.  There was no practical difficulty that required the new addition to be located on the south side of the house, when Sumerauer admitted it could be built on the north side without violating any code restrictions;

4.  There was no practical difficulty because current conditions did not interfere with any beneficial use of the house, which Sumerauer purchased and has been fully able to live in;

5.  Construction of a 2-story addition within 5 feet of the property line would destroy the privacy in neighbors backyards and interfere with their enjoyment of their own property;

6.  Construction of a 2-story addition within 5 feet of the property line would block lakeshore views of the neighbors, interfering with enjoyment and reducing the value of the neighboring properties;

7.  Crowding a 6,000-plus square foot residence into a 15,000 square foot lot would interfere with the character and beauty of that neighborhood, the large green spaces in the back, that were not crowding people in there.

Additionally, Sumeraurer's architectural drawings demonstrated that the proposed addition would only be five feet away from combustible materials, thus openly raising the prospect of a fire hazard to adjoining properties.

{¶ 5} At the conclusion of the hearing, the BZA granted Sumerauer's request for a variance, stating:

> [t]he Board finds that the appeal should be granted as there is clearly a practical difficulty in complying with the code due to the unusual shape of the property; and refusal of the variance would deprive the owner of substantial property rights; and granting the appeal will not be contrary to the purpose and intent of the Zoning Code.

BZA Resolution, Exhibit A to Notice of Appeal to Trial Court.

{¶ 6} As a result of the BZA's decision, several neighbors filed an administrative appeal in the Cuyahoga County Court of Common Pleas. The trial court did not conduct a hearing, but rather issued a decision based on the briefs filed by each party. The trial court affirmed the BZA's decision citing the factors to be considered in *Duncan v. Middlefield*, 23 Ohio St.3d 83, 491 N.E.2d 692 (1986), under the "practical difficulties" test.

{¶ 7} In response, Carney-Hagan filed this appeal assigning two errors for our review:

I. The trial court abused its discretion by failing to independently analyze the *Duncan* factors or explaining its rationale for supporting the Board of Zoning Appeals' decision; and

II. The trial court's judgment was against the manifest weight of the evidence because the *Duncan* factors weighed in favor of denying the variance.

## II.   Analyzing the *Duncan* Factors

### A.   Standard of Review

{¶ 8}   Accordingly,

[a] party who disagrees with a decision of a court of common pleas in an R.C. Chapter 2506 administrative appeal may appeal that decision to the court of appeals but only on "questions of law." R.C. 2506.04. For this reason, we have stated that under R.C. 2506.04, an appeal to the court of appeals is "more limited in scope" than was the appeal to the court of common pleas. *Kisil* [*v. Sandusky*], 12 Ohio St.3d 34, 465 N.E.2d 848; *see id.* at ¶ 34, fn. 4. While the court of common pleas is required to examine the evidence, the court of appeals may not weigh the evidence. *Independence* [*v. Office of the Cuyahoga Cty. Executive*], 142 Ohio St.3d 125, 2014-Ohio-4650, 28 N.E.3d 1182, at ¶ 14. Apart from deciding purely legal issues, the court of appeals can determine whether the court of common pleas abused its discretion, which in this context means reviewing whether the lower court abused its discretion in deciding that an administrative order was or was not supported by reliable, probative, and substantial evidence. *Boice v. Ottawa Hills*, 137 Ohio St.3d 412, 2013-Ohio-4769, 999 N.E.2d 649, ¶ 7, citing *Kisil* at 34.

*Shelly Materials, Inc. v. Streetsboro Planning & Zoning Comm.*, Slip Op. No. 2019-Ohio-4499, ¶ 17.

### B.   Whether the Trial Court Conducted an Independent Analysis of the Evidence Under the *Duncan* Factors and Explained Its Rationale for Concluding That There Was Adequate Evidence to Support the Decision of the Board of Zoning Appeals.

{¶ 9}   This court, as permitted by statute, can only review the trial court's decision that the BZA's decision was supported by reliable, probative, and substantial evidence. The trial court, however, "'weighs the evidence to determine whether a preponderance of reliable, probative, and substantial evidence supports the administrative decision, and if it does, the court may not substitute its judgment

for that of' the administrative agency.'" *Streetsboro Planning & Zoning Comm.* at ¶ 13, quoting *Independence*, 142 Ohio St.3d 125, 2014-Ohio-4650, 28 N.E.3d 1182, at ¶ 13.Carney-Hagan argues that the trial court did not conduct an independent analysis of the evidence as it applies to *Duncan*. The trial court, in its decision, listed the seven factors from *Duncan* to be considered in determining whether a property owner has encountered practical difficulties.

> The factors to be considered and weighed in determining whether a property owner seeking an area variance has encountered practical difficulties in the use of his property include, but are not limited to: (1) whether the property in question will yield a reasonable return or whether there can be any beneficial use of the property without the variance; (2) whether the variance is substantial; (3) whether the essential character of the neighborhood would be substantially altered or whether adjoining properties would suffer a substantial detriment as a result of the variance; (4) whether the variance would adversely affect the delivery of governmental services (e.g., water, sewer, garbage); (5) whether the property owner purchased the property with knowledge of the zoning restriction; (6) whether the property owner's predicament feasibly can be obviated through some method other than a variance; (7) whether the spirit and intent behind the zoning requirement would be observed and substantial justice done by granting the variance. *See, generally*, 3 Anderson, American Law of Zoning (2 Ed.1977), Variances, Section 18.47 et seq.; *Wachsberger v. Michalis*, 19 Misc.2d 909, 191 N.Y. Supp.2d 621 (1959).

*Duncan*, 23 Ohio St.3d at 86, 491 N.E.2d 692.

{¶ 10} The trial courted quoted *Duncan*, stating, "[n]o single factor controls; rather a variance may be granted even if some factors weigh in favor of a landowner, or are inconclusive." The trial court then reviewed the evidence presented by both parties and the testimony given at the BZA's hearing on the variance.

{¶ 11} Although the trial court did not conduct a line by line analysis of the *Duncan* factors, it did consider the arguments of both parties in light of the factors listed in *Duncan*. In its decision, the trial court noted some of the practical difficulties Sumerauer encountered stating, "[a]t the hearing, substantial evidence was presented of the difficulty in strictly complying with regulation given the lot's narrow depth from the street and the efforts made by the architect to minimize impact of the proposed structure on the neighbors while attempting to enhance the general neighborhood." The trial court also noted that "relocation of the project would not be functional to the existing house." In addition, the trial court stated that the neighbors "did not provide evidence at the hearing that the variance impacted anything other than a potential obstruction of a view." This further demonstrates that the trial court conducted a meaningful review of the evidence.

{¶ 12} The trial court also explained its rationale for concluding that there was adequate evidence to support BZA's decision, stating, "[t]he BZA found that Appellee showed (1) practical difficulty in conforming to the regulations; (2) that he was being deprived of substantial property rights if required to strictly conform to regulations; and (3) the variance was not contrary to intent of the City of Cleveland's Zoning Code, under Section 329.03(b)." Additionally, the trial court noted that the evidence presented by the neighbors "is not properly considered because none of the exceptions above apply to the proffered evidence."

{¶ 13} The trial court also considered the local councilman's testimony who stated:

This is an unusual shaped lot and I can sympathize with the concerns of losing views. I just lost the only lake view I had to Battery Park. They build the next phase and from my back window on the second floor we had a magnificent view. I lost that, but I understand that and supported the Variance request to build those townhomes. Views aren't always guaranteed and in order for this parcel and this house to function well, we have to design homes and support projects that not only short term benefits but benefit that structure 40, 50, 100, 75 years down the road. So, far all the reasons for the process to move forward, the support of the Nearwest Design Review, our Planning Department engaging the Edgewater Homeowners' Association, I'm here to support the Variance request as well.

(Tr. 52-53.).

{¶ 14} Given the extensive rationale the trial court provided in its opinion, we find that the trial court did not abuse its discretion by failing to independently analyze the *Duncan* factors or explaining its rationale for supporting the Board of Zoning Appeals' decision. *Duncan*, 23 Ohio St.3d 83, 491 N.E.2d 692.

{¶ 15} Based on existing law, Carney-Hagan's first assignment of error is overruled.

## III. Manifest Weight of the Evidence

### A. Standard of Review

{¶ 16} As previously stated,

[w]hile the court of common pleas is required to examine the evidence, the court of appeals may not weigh the evidence. *Independence*, 142 Ohio St.3d 125, 2014-Ohio-4650, 28 N.E.3d 1182, at ¶ 14. Apart from deciding purely legal issues, the court of appeals can determine whether the court of common pleas abused its discretion, which in this context means reviewing whether the lower court abused its discretion in deciding that an administrative order was or was not supported by reliable, probative, and substantial evidence. *Boice* * * *, 137 Ohio St.3d 412, 2013-Ohio-4769, 999 N.E.2d 649, citing *Kisil*[, 12 Ohio St.3d at 34, 465 N.E.2d 848], at 34.

*Streetsboro Planning & Zoning Comm.*, 2019-Ohio-4499, at ¶ 17.

**{¶ 17}** We are unable to review whether the trial court's judgment was against the manifest weight of the evidence.

> The standard of review to be applied by the court of appeals in an R.C. 2506.04 appeal is "*more limited* in scope." (Emphasis added.) *Kisil* at 34. "This statute grants a more limited power to the court of appeals to review the judgment of the common pleas court only on 'questions of law,' which does not include the same extensive power to weigh 'the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court." *Id.* at fn. 4. "It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. * * * The fact that the court of appeals, or this court, might have arrived at a different conclusion than the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so." *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.*, 40 Ohio St.3d 257, 261, 533 N.E.2d 264, 267 (1988).

*Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147, 2000-Ohio-493, 735 N.E.2d 433.

**{¶ 18}** Also,

> [i]n reviewing this type of decision under R.C. 2506.04, an appellate court cannot engage in any reweighing of the evidence; instead, the scope of our consideration is limited to determining if the trial court abused its discretion. *Miller v. Willowick*, 11th Dist. No. 2006-L-148, 2007-Ohio-465, ¶ 23. Under the precedent of this court, the term "abuse of discretion" is one of art, connoting judgment exercised by a court which does not comport with reason or the record. *Caudill v. Thomas*, 11th Dist. No. 2009-P-0087, 2011-Ohio-524, at ¶ 17, citing *Gaul v. Gaul*, 11th Dist. No. 2009-A-0011, 2010-Ohio-2156, at ¶ 24.

*Salotto v. Wickliffe Bd. of Zoning Appeals*, 193 Ohio App.3d 525, 2011-Ohio-1715, 952 N.E.2d 1174, ¶ 30 (11th Dist.).

**{¶ 19}** Therefore, Carney-Hagan's second assignment of error is overruled.

**{¶ 20}** Judgment is affirmed.

It is ordered that the appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
ANITA LASTER MAYS, JUDGE

MARY J. BOYLE, P.J., and
SEAN C. GALLAGHER, J., CONCUR