[Cite as *United Homes, L.L.C. v. Akron*, 2025-Ohio-1437.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| | | |
|---|---|---|
| UNITED HOMES, LLC | | C.A. No.     31071 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| CITY OF AKRON | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No.     CV 2023-05-1501 |

DECISION AND JOURNAL ENTRY

Dated: April 23, 2025

HENSAL, Judge.

{¶1} The City of Akron appeals a judgment of the Summit County Court of Common Pleas that reversed a decision of the City's Vacant Commercial or Industrial Building Appeals Board ("the Board"). For the following reasons, this Court reverses.

I.

{¶2} In 2020, United Homes, LLC ("United") purchased a vacant grocery store in Akron with plans to renovate it. According to the City, United failed to make any meaningful progress on securing or rehabilitating the structure over the next few years. Instead, the City repeatedly had to remove trash from the property, mow high grass and weeds, and make repairs to the structure. The police department also had to respond to multiple calls of trespassers, and the fire department found a person living in the building after responding to a report of arson.

{¶3} An employee of the City's department of neighborhood assistance eventually referred the property to the Board under Section 154.051 of the Akron Code of Ordinances for

consideration of whether the property should be repaired or demolished. Following a hearing, the Board concluded that the structure should be demolished. United appealed to the common pleas court, which reversed the Board's decision. The court held that the City had violated United's due process rights because it did not provide sufficient notice of violations United had committed. The City has appealed, assigning as error that the common pleas court's decision is incorrect as a matter of law.

II.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT VACATED THE CITY OF AKRON'S VACANT COMMERCIAL OR INDUSTRIAL BUILDINGS APPEALS BOARD'S ORDER TO DEMOLISH THE FORMER FIRESTONE PARK IGA STORE.

{¶4} In its assignment of error, the City argues that the common pleas court incorrectly applied its ordinances when it reviewed the Board's decision. "A party who disagrees with a decision of a court of common pleas" in an administrative appeal under Revised Code Section 2506.04 "may appeal that decision to the court of appeals but only on 'questions of law.'" *Shelly Materials, Inc. v. City of Streetsboro Plan. & Zoning Comm.*, 2019-Ohio-4499, ¶ 17, quoting R.C. 2506.04. An appeal to the court of appeals is limited in scope, and the court of appeals may not weigh the evidence. *Id.* "Apart from deciding purely legal issues, the court of appeals can determine whether the court of common pleas abused its discretion, which in this context means reviewing whether the lower court abused its discretion in deciding that an administrative order was or was not supported by reliable, probative, and substantial evidence." *Id.*

{¶5} Chapter 154 of the City's codified ordinances addresses vacant commercial or industrial buildings. Section 154.051(A) provides that, "[o]n receipt of a report of" the director of the department of neighborhood assistance or their authorized representative "that a vacant

commercial or industrial building or property is in such a condition as to create a risk of hazard to the public health or safety," the Board shall give notice to the owner, hold a hearing and hear testimony, make written findings of fact "as to whether the building or structure is maintained in such a condition as to constitute a public nuisance" and issue an order that commands the building to be repaired or demolished. A "'[p]ublic nuisance'" means all buildings, structures, and property that constitute a dangerous and unsafe hazard to the health, safety, or general welfare of the occupants [or] the public" because of the following defects:

> 1. Those having walls, floors, foundations, or other members so out of plumb, level, or original position, or so deteriorated or overloaded, as to be unlikely to perform their intended structural function, or in such condition or of such size as to cause stresses in any structural members likely to result in failure or collapse; or

> 2. Those so dilapidated, decayed, or unsafe, or which so substantially fail to provide the basic elements of shelter of safety, that they are unfit for human habitation or use or dangerous to life or property; or

> 3. Those which, in the opinion of the Fire Chief, constitute a serious fire hazard due to their use, construction, unprotected exposure, or lack of maintenance; or

> 4. Those presenting a hazard to the health, safety, general welfare, or morals of occupants, neighboring properties, or the public; or

> 5. Those which, despite order by the Director to make or keep them in a condition compliant with this chapter, have not been brought into compliance with the terms and conditions of this chapter or an approved building plan, if applicable.

Akron Code of Ordinances 154.01.

{¶6} In this case, an employee of the department of neighborhood assistance issued a report that provided that "[t]he deteriorating condition of [United's] property makes it a public nuisance and a blight and safety hazard on the neighborhood." The Board, therefore, scheduled a hearing regarding whether the structure on the property should be demolished.

{¶7} At the hearing, the Board received testimony from two of United's members. They did not contest the condition of the property but focused on the hardships they had endured in

attempting to rehabilitate it and their intention to make repairs in the future. At the conclusion of the hearing, a member of the Board moved for the property to be demolished noting it was "vacant, heavily vandalized, dilapidated with police activity involved, no utilities, [and] tax delinquent . . . ." He, therefore, argued that the condition of the building was "a public nuisance and a blight and a safety hazard to the neighborhood." The Board subsequently passed the motion. The minutes of the hearing indicate that the Board resolved a motion to demolish the building "due to the fact that the structure is vacant, dilapidated, tax delinquent, a safety hazard, a blight to the community, and a public nuisance . . . ."

{¶8} Following the hearing, the Board issued a written demolition order that contained its findings of fact. The order explained that the Board had found that the department of neighborhood assistance had proven by the preponderance of substantial, reliable, and probative evidence that the property should be demolished. Specifically, the Board had found that "the structure is dilapidated, decayed, unsafe, unsanitary and a blighting influence on the neighborhood, that the property is in violation of the Building Code, is unfit for human habitation or use, is a public nuisance, is injurious to the surrounding neighborhood and the people of Akron and that demolition is reasonably necessary to abate the nuisance."

{¶9} United appealed the Board's decision to the common pleas court. In its memorandum in support of its appeal, United argued that the Board could not order the demolition of its property until it followed the procedures of Section 154.03 and that the Board had not provided proper notice under it. United also argued that it was not provided with a list of specific violations it had committed, and the remedial actions required or given a reasonable amount of time to bring its property into compliance. It also argued that the Board's decision was unconstitutional because it amounted to a taking of its property. United further argued that the

Board improperly ignored the hardships it was facing, disregarded the insurance claims it was pursuing, and unreasonably failed to grant it an extension of time to renovate the building.

{¶10}  Following the completion of briefing by the parties, the common pleas court issued an order that reversed the Board's decision.  The court determined that the City had to comply with Section 154.03 before proceeding under 154.051.  Considering the evidence and testimony that had been presented at the hearing, the court determined that the Board's finding of a public nuisance turned on United's inability to bring the property into compliance with Chapter 154 of the Code of Ordinances.  Noting that Section 154.03 authorizes the department of neighborhood assistance to issue orders to comply, the court concluded that the City could not find there is a public nuisance under the fifth definition of public nuisance unless the City complied with Section 154.03.  Because the City had not complied with that section, the court concluded that the Board's decision violated United's right to due process and reversed it.

{¶11}  The City argues that the common pleas court misconstrued Section 154.051.  It argues that Section 154.03 and 154.051 both allow the Board to order a building to be repaired or demolished.  Section 154.03 applies if a property owner does not comply with violation notices while Section 154.051 applies to public nuisances.  The City also notes that Section 154.03 does not contain any language applying to public nuisances.  It further notes that only one subsection of the definition of public nuisance mentions noncompliance with a department of neighborhood assistance order.  According to the City, the Board's decision was based on two other parts of the definition of public nuisance that do not require a code violation.  It argues that any of the requirements of Section 154.03, therefore, did not apply, and United was not deprived of due process.

{¶12} As previously noted, the Board's written explanation for ordering the demolition of the structure was its finding "that the structure is dilapidated, decayed, unsafe, unsanitary and a blighting influence on the neighborhood, that the property is in violation of the Building Code, is unfit for human habitation or use, is a public nuisance, [and] is injurious to the surrounding neighborhood and the people of Akron . . . ." Although those findings do not align exactly with any of the subparts of the definition of public nuisance, they most closely match the requirement that a building be "so dilapidated, decayed, or unsafe . . . that they are . . . dangerous to life or property" under the second subpart or that the building "present[ ] a hazard to the health, safety, general welfare or morals of occupants, neighboring properties, or the public" under the fourth subpart. Akron Code of Ordinances 154.01. The Board's findings, either in its written order or at the hearing, do not match the fifth subpart, which is that, "despite order by the Director to make or keep them in a condition compliant with this chapter, have not been brought into compliance with the terms and conditions of this chapter or an approved building plan, if applicable." *Id*.

{¶13} The Board's written findings also refer to violations of "the Building Code[,]" but the City's building code is in Title 19 of its codified ordinances, not Chapter 154. The "terms and conditions" of Chapter 154 concern registering the building as vacant, submitting a vacant building plan, maintaining buildings to certain standards, and disclosing violations of the chapter to buyers of the property. The only two provisions in Chapter 154 that mention the City's building code are one that provides that anyone in control of a building shall give the owner of the building access so that the owner can make any repairs necessary to comply with the building code and one that provides that the exterior surfaces and openings of vacant building must be maintained to the standards specified in the building code.

{¶14} The common pleas court considered "the evidence and the testimony from the hearing" and determined that the Board's public nuisance finding must have been under the fifth subpart of the definition instead of referring to the Board's written decision. Because that subpart refers to compliance orders issued by the department, it determined that the City had to comply with Section 154.03 before it could institute a proceeding under Section 154.051. Section 154.03, however, applies when "the Director determines that there has been a violation of any the provisions of this chapter" while a proceeding under Section 154.051 begins "[o]n receipt of a report of the Director that a vacant . . . building . . . is in such condition as to create a risk of hazard to the public health or safety . . . ." There is no requirement under Section 154.051 that the department of neighborhood assistance must have determined that there has been a violation of the chapter or that the department's director has imposed an administrative penalty before a proceeding under that section may begin. We note that a proceeding under Section 154.03 results, at most, in a fine and imprisonment for the owner or person in control of a building and does not address the underlying condition of the building at issue. Section 154.051, on the other hand, provides a procedure to repair or demolish buildings that are creating "a risk of hazard to the public health or safety" and that "constitute a public nuisance . . . ."

{¶15} We also note that Section 154.051(A)(1) identifies the notice that the board must provide before proceeding under that section. It provides that the Board shall give written notice to the owner and any others having an interest in the building "by the method stated in Section 154.03(A)(4) of this chapter." *Id*. Section 154.03(A)(4) concerns how notice of the proceedings must be mailed, where it should be mailed, and what to do if the mail is returned undelivered. Section 154.051(A)(1) does not require compliance with Section 154.03(A)(2), which requires a notice to "[i]nclude a list of violations [and] refer to the sections and subsections violated . . . ."

United did not allege, and the common pleas court did not find, that the City failed to comply with Section 154.03(A)(4) when it notified United of the Section 154.051 hearing. Furthermore, even if the notice requirements of Section 154.03 apply when a finding of public nuisance is under the fifth subpart of the definition, the Board's finding in this case was not under that subpart.

{¶16} The dissent is concerned about confusion caused by the Board's findings. We agree that the Board could have more clearly indicated in its written decision which subparts of the definition of public nuisance that the City established existed. The dissent also argues, however, that the notice requirements of Sections 154.03 and 154.051 should be read together and that both need to be satisfied before the City can proceed with a demolition hearing. We disagree. Section 154.03 applies when "the Director determines that there has been a violation" of the chapter and requires that "he shall give notice of the violation to the person responsible therefor . . . ." Section 154.051, on the other hand, directs "the Board" to "[g]ive written notice to the owner and all other persons having an interest in the premises" after it receives "a report of the Director that a . . . building or property is in such a condition as to create a hazard to the public health or safety." One section requires the Director to provide a notice to a particular individual while the other requires the Board to give notice to anyone with an interest in the property. The notice under Section 154.03 is required to include a list of violations and specify a reasonable time in which to comply while the notice under Section 154.051 provides notice of a hearing date before the Board. Violations only come before the Board if a person appeals an order issued by the Director. Akron Code of Ordinances 154.05(A). As the dissent acknowledges, "Section 154.051 contains a separate notice requirement that is pertinent to the demolition process" and it is the only notice requirement that the City had to comply with to provide due process to United.

{¶17} Upon review of the record, we conclude that the common pleas court incorrectly concluded that the Board could not initiate a proceeding under Section 154.051 unless it notified United of specific violations of Chapter 154 that had occurred related to the building. The City's assignment of error is sustained.

III.

{¶18} The City's assignment of error is sustained. The judgment of the Summit County Court of Common Pleas is reversed, and this matter is remanded for further proceedings consistent with this decision.

Judgment reversed,<br>and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

JENNIFER HENSAL
FOR THE COURT

FLAGG LANZINGER, P. J.
CONCURS.

CARR, J.
DISSENTING.

{¶19} I respectfully dissent as I would affirm the trial court's judgment. I am troubled by the due process concerns in this case, particularly given that the Board's findings created some confusion regarding the legal standard that United Homes was required to satisfy in order to avoid demolition. Chapter 154 of the Akron Code of Ordinances deals with vacant commercial or industrial buildings in the City. The notice requirement in Section 154.03 applies "[w]henever the Director determines that there has been a violation of any of the provisions of this chapter[.]" Section 154.051 contains a separate notice requirement that is pertinent to the demolition process. Statutory provisions should be construed in pari materia, meaning in a like manner, when the provisions are not in conflict. *See generally State v. Nixon*, 2006-Ohio-72, ¶ 9 (9th Dist.). I would affirm the trial court's judgment on the basis that satisfying the notice requirement in Section 154.051 does not negate the need to satisfy the notice requirement in Section 154.03.

APPEARANCES:

DEBORAH S. MATZ, Director of Law, and JOHN R. YORK and JACQUENETTE S. CORGAN, Assistant Directors of Law, for Appellant.

WARNER MENDENHALL and FRANK LUCAS, Attorneys at Law, for Appellee.