**[Cite as *Plowman v. Waterville*, 2025-Ohio-267.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Timothy Plowman, et al.                    Court of Appeals No.  L-24-1010

      Appellants                              Trial Court No.  CI0202204696

v.

City of Waterville, et al                  **DECISION AND JUDGMENT**

      Appellees                               Decided:  January 24, 2025

* * * * *

Jeffrey Stopar and Holly Dye, for appellants.

Brittany Asmus and David Hudson, for appellees.

* * * * *

**ZMUDA, J.**

## I.  Introduction

**{¶ 1}** Appellants, Timothy Plowman, Jacqueline Schluter, Steven Letzring, Stephani Letzring, Colleen Harrell, Matthew Harrell, Adam Freeman, and Michelle Freeman ("appellants"), appeal the judgment of the Lucas County Common Pleas Court in a zoning appeal pursuant to R.C. Chapter 2506. Finding no abuse of discretion by the trial court, we affirm.

## II. Facts and Procedural History

{¶ 2} This matter is a zoning case, concerning a conditional use permit enacted as city of Waterville Ordinance 10-22 to allow DFG Waterville Landings, LLC/Devonshire REIT II and HBC Management, LLC/HB Concerts (collectively, "HBC") to construct and operate an outdoor, seasonal amphitheater in the 600 block of Pray Street in Waterville, Ohio. Appellants are comprised of Waterville residents living near the property who oppose the construction of an amphitheater. Appellees include the city of Waterville and HBC.

{¶ 3} In 2022, HBC applied for a conditional use permit to operate the proposed outdoor amphitheater on a 39.49-acre site located at the end of Pray Boulevard, south of St. Rt. 64, Waterville-Swanton Road. At the time of application, the property was zoned Highway Commercial (C-3) and Mixed-Use Business District (C-4).

### A. City Council passed Ordinance 10-22.

{¶ 4} The Waterville Planning Commission considered the application and took public comment at its August 15, 2022 meeting. At the planning commission meeting of September 12, 2022, the commission held a question-and-answer session and received additional evidence from HBC, prior to making a recommendation to city council. The commission recommended approval of the conditional use permit application, subject to conditions, with 3 votes in favor and 2 votes opposed.

2

**1.    The council held the required readings of the Ordinance prior to an evidentiary hearing.**

{¶ 5} On September 12, 2022, the Waterville City Council held the first of three readings of the ordinance at its scheduled meeting, held at the Waterville Primary School. Council also considered other, unrelated matters at this meeting. Numerous citizens spoke during the public comment portion of the meeting, with comments both in favor and against the proposed amphitheater project. Many were concerned about the city's ability to manage noise levels, increased traffic, and public safety related to operation of an amphitheater.

{¶ 6} On September 26, 2022, council held its scheduled meeting, convened at the Waterville Primary School, and again received public comment on the proposed amphitheater project. The comments were consistent with those voiced at the previous meeting. The second reading of the ordinance, scheduled for September 26, was continued until October 10, 2022. Council proposed conditions, in addition to those recommended by the planning commission, for the conditional use permit. In addition to the discussion of the amphitheater, council also considered other, unrelated matters at this meeting.

{¶ 7} On October 10, 2022, council held the second reading of the ordinance at its scheduled meeting, convened at the Waterville Primary School. The meeting minutes denoted this meeting as a "special meeting." Council again received public comment on the proposed amphitheater project, with residents voicing concerns regarding noise, traffic, lighting, and safety issues, as well as concerns that the amphitheater would bring

3

"undesirables" or drugs to the city, placing a burden of the city's infrastructure and rescue services, and concerns regarding the environmental impact and the potential effect on property values.

{¶ 8} On October 24, 2022, city council held its scheduled meeting at the Waterville Primary School. After addressing other, unrelated matters, council held the third and final reading of the ordinance and proceeded to an evidentiary hearing. HBC presented testimony under oath regarding the proposed project and submitted numerous exhibits into evidence.

### 2. HBC testified and entered exhibits in support of the Amphitheater project.

{¶ 9} John Henry, a partner in HBC Management, LLC testified first. Henry indicated he was a long-time resident of Waterville and had owned a business in town. He also testified regarding his other business experience, leading up to the amphitheater project, and indicated he and the property owner considered the property "the perfect site for the amphitheater" based on the access from the highway, the lack of prior development on the land that could present "EPA problems," and the surrounding demographics. Additionally, the zoning for the site was already changed from agricultural use to permit commercial development, reflecting the city's ten-year usage plan that envisioned commercial development on the property. Henry acknowledged the conditions proposed by the planning commission, and he outlined a parking plan, the traffic study, the noise study, a safety plan, and a security plan for operation of the amphitheater. Appellants' counsel did not cross-examine Henry.

4

{¶ 10} Next, Tim Bockbrader testified. Bockbrader is a landscape architect, and after outlining his professional qualifications, he described his role as part of the development team for the amphitheater project. Bockbrader prepared landscape plans to meet city code requirements, and testified regarding the preliminary landscape plan, which was introduced through exhibits. Appellants' counsel did not cross-examine Bockbrader.

{¶ 11} Williams Roberson testified next. Roberson is a licensed architect, with about 27 years of experience in the industry. Roberson testified he is the architect for the amphitheater project and had performed similar work for another client. He presented architectural renderings, as exhibits, and testified regarding the design plan for the amphitheater, indicating the design for the permanent structures would attempt to incorporate elements that were consistent with other historic buildings in Waterville. He addressed the materials that the project would use, the design elements, and the aesthetic for the project. Appellant's counsel did not cross-examine Roberson.

{¶ 12} Next, Laurie Adams, a traffic and safety consultant, testified. Adams outlined her professional qualifications and explained her role in the amphitheater project. She prepared the traffic impact study after analyzing the traffic "at these intersections -- both ramps of 64, at Pray Boulevard, at Waterville Monclova and 64, and at Pray Boulevard and Waterville Monclova." Adams prepared a report, based on observance of actual traffic, recommending mitigation efforts to manage the projected traffic flow during events at the amphitheater. Adams' report, submitted as an exhibit,

provided the data to support her conclusions as an appendix to her report. Appellants' counsel did not cross-examine Adams.

{¶ 13} The final witness for HBC, Jeff Hedback, was introduced by deposition. Portions of the deposition were read into the record at hearing. Hedback is not a professional engineer, but an acoustician, qualified by at least ten years in the field and accomplishment in areas of architectural acoustics, noise and vibration control, and similar applications. Hedback testified he had about 22 years of experience in the field and had done architectural acoustics for many types of residential and commercial settings. Hedback prepared an acoustical study "for the representative sound sources of brown noise and stage sounds that emanate in an omnidirectional pattern." He also prepared a "sound pressure mapping study" that is more detailed, factoring in buildings, topography, and the neighborhood to the east of the site. Hedback determined that the target sound level of 50 decibels could be met for the nearest neighbors through sound barriers and other remediation efforts. The deposition transcript was presented as an exhibit.

3.      **Appellants testified and entered exhibits opposing the Amphitheater project.**

{¶ 14} Appellants' counsel conducted cross-examination of Hedbeck during the deposition. At hearing, counsel objected to the admission of Hedback's entire deposition testimony, arguing Hedbeck's study was not performed by a licensed professional engineer. The council admitted the deposition over appellants' objection. At the close of Hedback's testimony, HBC concluded their case.

6

{¶ 15} Counsel for appellants proceeded with argument, prior to calling representative landowners to give statements as testimony. Appellants' counsel argued that the amphitheater application presented a land use issue, and based on the city code, HBC failed to address all required conditions listed in the planning commission's recommendation, considering the tentative and preliminary plans. Specifically, counsel challenged the acoustician's report, arguing Hedbeck lacked the necessary credentials and experience and failed to conduct a site study, performing his work remotely. Counsel argued in favor of returning the matter to the planning commission for more detailed review so that the commission might render "an informed recommendation." At the close of argument, counsel presented the testimony of affected homeowners of neighboring properties, Timothy Plowman, Matt Harrell, Jacqueline Schluter, and Adam Freeman.

{¶ 16} Timothy Plowman gave his statement in opposition to the amphitheater project. Plowman testified he lived "approximately 2500 feet from the proposed amphitheater." He argued that the sound study performed by appellees demonstrated compliance with city code was not possible. He further stated that the noise levels would be detrimental to his and his family's health and the city's Bill of Rights guaranteed peaceful enjoyment at home. Plowman testified that he considered the Bill of Rights "an insurance" in deciding to purchase his home.

{¶ 17} On cross-examination, Plowman acknowledged he performed due diligence prior to buying his home, and he was aware the land adjacent to his home was zoned for commercial development at the time of purchase. He further acknowledged that permitted

7

uses, or uses requiring no conditional use permit, included bars, taverns, cocktail lounges, nightclubs, dance halls, hotels and motels, motor courts, and vehicle fueling stations with repair garages. Plowman maintained, however, that the noise produced by an amphitheater was beyond the conditions he contemplated in purchasing his home, despite the commercial zoning next to his property.

{¶ 18} Following Plowman, Matt Harrell testified. Harrell stated his opposition to the amphitheater, and specifically challenged whether HBC satisfied the requirements for a conditional use permit because the proposed amphitheater was not compatible with the residential use abutting the site and there was no determination that the proposed amphitheater would not be detrimental to neighboring properties. Counsel for HBC did not cross-examine Harrell.

{¶ 19} Jacqueline Schluter testified next. She also lives near the proposed amphitheater, and stated the noise pollution and vibrations caused by the amphitheater would negatively impact her family's health and devalue her property. She testified that she consulted an appraiser who determined her property "could experience a negative adjustment of $21,000 due to the amphitheater's noise pollution." Schluter also voiced skepticism of the appellee's sound study, stating the amphitheater could not operate within the noise level required to comply with city code. At the close of Schluter's testimony, HBC's counsel objected to Schluter's testimony regarding the future value of her home as inadmissible opinion testimony and inadmissible hearsay.

8

{¶ 20} Finally, Adam Freeman testified. Freeman also is a resident of the adjacent neighborhood and argued that the proposed amphitheater did not satisfy the requirements for a special use under the city's code. Freeman testified that the amphitheater would negatively affect his property value and cause a strain on the city's infrastructure with traffic congestion and increased costs to maintain fire and EMS, police, and public utilities at a cost to taxpayers. Freeman also argued that the project could fail, as concert venues have failed in other cities, and there was no evidence demonstrating the amphitheater was "either necessary or desirable."  At the close of Freeman's testimony, HBC's counsel objected to lay opinion regarding future real estate values.

{¶ 21} Appellants entered their own exhibits, consisting of a position statement in opposition to the proposed amphitheater, a copy of the Waterville comprehensive plan dated July 2012, a statement regarding the effect on property values caused by the proposed amphitheater for the Plowman/Schluter property, and a letter to the mayor and council from Michael Laurello, a resident who works as a professional audio technician, arguing in favor for a more detailed sound study to address low frequency (bass) noise pollution.

### 4. Council voted to pass Ordinance 10-22, with a 4-2 majority vote.

{¶ 22} At the close of testimony, council heard public comment on the amphitheater project from additional city residents. The comment was consistent with prior public comment, with some support for the amphitheater project, but most citizens voicing concerns and opposition. At the close of hearing, council took the matter under

9

advisement to consider the voluminous record. Council announced the matter would go to vote/decision at the meeting scheduled on November 28, 2022.

{¶ 23} On November 28, 2022, council adopted the ordinance, with the ordinance passing by a vote of four in favor, two against, and one abstaining. Council also adopted ordinance 12-22, an ordinance accepting additional amphitheater restrictions as an emergency measure with six votes in favor and one abstention. In addition to the conditional use permit and the additional conditions, council considered one other, unrelated matter at the November 28, 2022 meeting.

{¶ 24} Council approved the minutes of the November 28, 2022 meeting, referring to the meeting as a regular meeting, at its meeting on December 12, 2022.

**B. Appellants perfected an administrative appeal to the trial court.**

{¶ 25} Appellants filed a timely appeal of city council's decision to grant the conditional use permit with conditions, pursuant to R.C. Chapter 2506, naming the city of Waterville as defendant/appellee. HBC moved to intervene in the appeal as the applicant for the permit, pursuant to Civ.R. 24, and the trial court granted intervention and added HBC as a party aligned with the city.[1]

{¶ 26} Appellants filed a motion to supplement the record with additional evidence, pursuant to R.C. 2506.03(A)(5). The trial court granted the motion, and on May

---

[1] Waterville Township also sought to intervene in this appeal, but their motion to intervene was denied.

25, 2023, held an evidentiary hearing to supplement the record. The court heard testimony from council members Barb Bruno and Mary Duncan.

**1. The trial court held an evidentiary hearing to supplement the record in the administrative appeal.**

{¶ 27} Bruno testified regarding the city's comprehensive plan, which was developed while she was on council. Bruno testified that the community survey, conducted for the comprehensive plan, demonstrated a desire for increased entertainment within the city and the amphitheater aligned with the comprehensive plan by creating a new entertainment venue. Bruno testified that council addressed the concerns raised by neighbors, including noise, safety, and traffic concerns, and the added conditions addressed those concerns.

{¶ 28} Duncan also testified, and despite voting no on the conditional use permit, she indicated the amphitheater would not have a negative impact on the neighboring properties. Duncan, herself, resides in the neighborhood and indicated she voted no after her home was vandalized and she received threats.

{¶ 29} At the close of testimony, the parties entered numerous exhibits into the record. Appellants submitted an email from Jon Gochenour, Waterville Administrator, to appellants' counsel, with Ordinances 10-22 and 12-22 and a copy of findings of fact/conclusions of law dated 12/8/22; Minutes of the council meeting held November 28, 2022; and an email to council members regarding acoustical fencing sent 10/28/22, with a response from council member Mary Duncan that same date.

11

**{¶ 30}** Appellees entered exhibits including audio recording of city council meetings on September 12, September 26, October 10, October 24, November 28, 2022, and December 12, 2022; planning commission meeting minutes from September 12, 2022; council meeting minutes from September 22, September 26, October 10, October 24, November 28, and December 12, 2022; Findings of Fact and Conclusions of Law regarding conditional use permit Ordinance 10-22; Record of Ordinance No. 12-22, passed November 28, 2022; Record of Ordinance 10-22, passed November 28,2022; City of Waterville Office of Zoning Staff Report dated 9/9/22.

**2. The parties filed written briefs in the trial court.**

**{¶ 31}** Briefing followed the hearing.

**{¶ 32}** In their merit brief, appellants challenged Ordinance 10-22 on issues of fact and law, raising three specific issues. First, appellants argued that the criteria for a conditional use permit was not met, because the amphitheater required permanent structures, and therefore did not qualify as "temporary, seasonal" use. Second, appellants argued that because the council called the November 28, 2022 meeting a "special" meeting, the city charter required at least five votes in favor of the conditional use permit to be valid, but the vote for the permit was split with four in favor and two against. Third, appellants argued that appellees did not present evidence on certain criteria to approve a special use application under the city's code, because there was no evidence regarding the impact on neighboring property values or the exact location of all required parking.

12

{¶ 33} Appellees responded, noting appellants challenged technical application of the law without demonstrating the city council's decision was unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence, considering the entire record, as required under R.C. Chapter 2506. Appellees addressed each issue raised by appellants, relying on reference to the evidence in arguing to affirm Ordinance 10-22.

{¶ 34} As to the "temporary, seasonal" nature, necessitating a conditional use permit, appellees noted the evidence of existing zoning for the property, as well as council member Barb Bruno's testimony, demonstrating that the only aspect of the amphitheater project requiring a conditional use permit was the stage and sound system. The permanent structures proposed as part of the amphitheater could be built without a conditional use permit, based on present zoning. Therefore, appellees argued, the permanent structures did not negate the "temporary, seasonal" nature of the stage and sound system, the only components that required the conditional use permit.

{¶ 35} Appellees also cited evidence demonstrating the November 28, 2022 meeting was not a "special meeting" as that term is defined by the city code. Testimony demonstrated that council regularly met on the second and fourth Monday of each month, and pursuant to Waterville ordinances and the city charter, special meetings are called through a specific process, with no evidence demonstrating this process was followed relative to the meeting on November 28, 2022. Instead, appellees argued the evidence

13

demonstrated that council convened a regular meeting at the regularly scheduled date and time, and merely held the meeting at the school to enable a larger audience to attend.

{¶ 36} Finally, appellees referred to the record in arguing that council was provided evidence regarding the considerations necessary to approve a special use under the city's code. Both council members Barb Bruno and Mary Duncan also testified regarding consideration of any impact on neighboring properties, as well as traffic, parking, and safety concerns. Bruno testified that council relied on the testimony as well as recommendations from professionals in the city, such as the police and fire chiefs, and found appellants' evidence of decreased housing values not credible and speculative. Duncan, likewise, testified that the amphitheater would not cause substantial injury to the neighborhood, where Duncan also lived, and the conditional use requested by HBC was designed and located in a manner that would not impact the safety or home values and conformed with the planned development for the area.

{¶ 37} Prior to the trial court's judgment, more than a year had passed from council's vote on Ordinance 10-22. Appellants did not seek to dismiss the appeal as moot based on the failure to begin construction of the amphitheater within a year of approval of the special use.

### 3. The trial court affirmed council's passage of Ordinance 10-22.

{¶ 38} On December 18, 2023, the trial court found the council's decision, voting to pass Ordinance 10-22, was not unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the substantial, reliable, and probative evidence, based

14

on consideration of the whole record, and affirmed the city of Waterville Ordinance 10-22. Considering the record, the trial court noted the procedure followed by council and the evidence adduced at hearing, and determined the amphitheater is a permissible, conditional use as provided by the city code. The trial court further found that the amphitheater satisfied the criteria for a special use application by a preponderance of the substantial, reliable, and probative evidence, with appellants' concerns regarding property values unsupported by credible evidence, rejecting appellants' opinion testimony regarding decreased property values as speculative.

{¶ 39} As to the propriety of the vote during the November 28, 2022 council meeting, the trial court considered the evidence, including the journalized meeting minutes, and determined the evidence demonstrate the meeting was a "regularly scheduled and noticed meeting simply held at a different location to accommodate the public." The trial court noted that there was no indication that the requirements for convening a special meeting were met, and council adopted the meeting minutes at the subsequent meeting on December 12, 2022, designating the November 28 meeting as a regular council meeting in the approved minutes.

{¶ 40} The trial court affirmed the city of Waterville's Ordinance 10-22.

{¶ 41} This appeal followed.

### III. Assignments of Error

{¶ 42} Appellants assert the following assignments of error on appeal:

1. The Common Pleas Court erred in holding that the proposed amphitheater is

a valid conditional use under the City's code.

2. The November 28, 2022 meeting of City Council was a special meeting; thus, any vote to approve the amphitheater required five votes under the City's Charter.

3. The criteria for issuing a conditional use permit under Section 1148.05 of the City's code were not satisfied.

4. This appeal is moot because the development has not been commenced within one year of approval of the special use.

### IV. Analysis

{¶ 43} Appellants seek review of the trial court's determination of their administrative appeal, pursuant to R.C. 2506.04, which provides:

> If an appeal is taken in relation to a final order, adjudication, or decision covered by division (A) of section 2506.01 of the Revised Code, the court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court. The judgment of the court may be appealed by any party on questions of law as provided in the Rules of Appellate Procedure and, to the extent not in conflict with these rules, Chapter 2505 of the Revised Code.

{¶ 44} As provided by statute, the trial court weighs the evidence to determine whether a "preponderance of substantial, reliable, and probative evidence" supports the administrative decision, "and if it does, the court may not substitute its judgment for that

of the board." *OMNI Property Cos. v. Sylvania Twp. Bd. of Zoning Appeals,* 2022-Ohio-3083, ¶ 28 (6th Dist.), citing *Independence v. Office of the Cuyahoga Cty. Executive,* 2014-Ohio-4650, ¶ 13, citing *Dudukovich v. Lorain Metro. Hous. Auth.,* 58 Ohio St.2d 202, 207 (1979). The trial court presumes the administrative board's decision is valid, with the appealing party charged with demonstrating otherwise in challenging the decision. *Id.,* citing *JSS Properties, II, LLC v. Liberty Twp. Bd. of Zoning Appeals,* 2018-Ohio-1492, ¶ 6 (5th Dist.), citing *Hollinger v. Pike Twp. Bd. of Zoning Appeals,* 2010-Ohio-5097 (5th Dist.).

{¶ 45} In contrast, "an appeal to the court of appeals, pursuant to R.C. 2506.04, is more limited in scope and requires that court to affirm the common pleas court, unless the court of appeals finds, as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative and substantial evidence." *Kisil v. City of Sandusky*, 12 Ohio St.3d 30, 34 (1984).

{¶ 46} "Notably, the court of appeals reviews the decision of the common pleas court, not the decision of the administrative body." *Matt Pool, Ltd. v. Sandusky Housing Appeals Board,* 2024-Ohio-4724, ¶ 49 (6th Dist.), citing *Cleveland Clinic Found. v. Cleveland Bd. of Zoning Appeals,* 2014-Ohio-4809, ¶ 27. The court of appeals does not weigh the evidence or substitute its judgment for that of either the administrative body or the common pleas court, limiting review to questions of law, applying a de novo standard, and determining whether the trial court abused its discretion in applying the law. *Bowling v. Norman,* 2024-Ohio-2658, ¶ 11 (6th Dist.), citing *Adams Quality Heating*

17

*& Cooling v. Erie Cty. Health Dept.,* 2014-Ohio-2318, ¶ 11 (6th Dist.) (additional citation omitted.). A court abuses its discretion when its decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983).

{¶ 47} In their first and third assignments of error, appellants challenge the judgment of the trial court, arguing the trial court abused its discretion in upholding Ordinance 10-22. In their second assignment of error, appellants assert a procedural challenge, arguing the vote in favor of Ordinance 10-22 was invalid, applying the law governing a special council meeting. In their fourth assignment of error, appellants argue that the appeal is moot based on appellees' failure to commence construction of the amphitheater. For ease of discussion, we address appellants' argument regarding mootness first, and address appellants' first and third assignments of error together.

## A. Appellants' argument of mootness lacks support in the record.

{¶ 48} In their fourth assignment of error, appellants argue "alternatively" that "if all of Appellant's assignments of error are overruled, Appellants suggest that this appeal is now moot." In support, appellants note that Section 1148.09 of the city's municipal code provides: "In the event that construction of an approved special use is not started within the year and substantially completed within two (2) years after approval by Council, the special use certificate shall expire and reapplication for the approval of the special use shall be necessary." Therefore, appellants argue, we should deem their appeal moot because no construction has commenced.

18

**{¶ 49}** "The doctrine of mootness is rooted both in the 'case' or 'controversy' language of Section 2, Article III of the United States Constitution and in the general notion of judicial restraint. (Citation omitted) *James A. Keller, Inc. v. Flaherty*, 74 Ohio App.3d 788, 791, (10th Dist.1991). In Ohio, the law is well-settled that courts have no duty to determine purely academic or abstract questions, and with some exceptions, courts should not rule on a moot question. *Id.,* citing *Miner v. Witt,* 82 Ohio St. 237 (1910), syllabus.

**{¶ 50}** Whether a case is moot presents a question of law, subject to de novo review on appeal. *Metz v. Bowling Green,* 2024-Ohio-4614, ¶ 19 (6th Dist.), citing *State ex rel. Wood v. Rocky River,* 2021-Ohio-3313, ¶ 13 (additional citation omitted.). "A case is moot when 'without any fault of the defendant, an event occurs which renders it impossible for [a] court, if it should decide the case in favor of the plaintiff, to grant him any effectual relief whatever.'" *Metz* at ¶ 19, quoting *State ex rel. Wood v. Rocky River,* 2021-Ohio-3313, ¶ 13, quoting *State ex rel Eliza Jennings, Inc., v. Noble,* 49 Ohio St.3d 71, 74 (1990). Where the appeal involves the construction of a building or buildings, no stay is obtained, and construction commences, the appeal is rendered moot. *Metz* at ¶ 19, citing *Smetzer v. Catawba Island Twp. Bd. of Zoning Appeals,* 2018-Ohio-4238, ¶ 11 (6th Dist.) (additional citations omitted.).

**{¶ 51}** In this case, appellants do not argue mootness based on construction and a failure to obtain a stay. This case presents a different scenario. Here, the appeal involves the proposed construction of an amphitheater, with no construction commenced.

19

Furthermore, it is appellants who seek determination that their own appeal is moot, but only if we do not find merit in their other assignments of error. Appellant's assigned error, moreover, challenges the validity of Ordinance 10-22, and by asking this court to consider this challenge before considering mootness is an acknowledgement that a controversy remains for which relief is sought.

{¶ 52} Appellants did not raise their mootness argument before the trial court, despite the fact more than a year had passed before the trial court entered judgment in the administrative appeal. Additionally, appellants cite only to the lack of construction, with no record from which we might find support for an expired permit, beyond the general reference in the city code. Finally, the conditional use permit was approved through passage of Ordinance 10-22, and dismissal of this appeal as moot would not invalidate or overturn Ordinance 10-22, which is the relief sought by appellants in this appeal.

{¶ 53} Considering the limited record regarding the circumstances related to construction and appellants' challenge to the validity of Ordinance 10-22, noting that dismissal would not overturn the ordinance, we find no support in the record to deem the appeal moot. We therefore find appellant's fourth assignment of error not well-taken.

**B. The record supported the trial court's findings regarding appellants' substantive challenge to passage of Ordinance 10-22.**

{¶ 54} In their first and third assignments of error, appellants argue substantive issues concerning Ordinance 10-22. They argue that the proposed amphitheater is not a valid conditional use and that the criteria for a conditional use permit was not satisfied,

20

rendering the trial court's decision to affirm the city council's passage of Ordinance 10-22 an abuse of discretion.

**1. The record supported the trial court's finding that the proposed amphitheater was a valid Conditional Use.**

{¶ 55} Appellants first argue that the proposed amphitheater is not a valid conditional use according to Sections 1139A.03(e) and 1139B.02(g) of the city's code. These Sections provide:

**1139A.03 CONDITIONAL USES**
In the C-3 Highway Commercial District, no premises shall be used and no building shall be erected or used for one of the following purposes unless approved by the Planning Commission pursuant to the procedures and guidelines outlined in Sections 1148.03 through 1148.10:
…
  (e)   Commercial, recreational or amusement development for temporary, seasonal periods only.


**1139B.03 CONDITIONAL USES.**

In the C-4 Mixed Use Business District, no premises shall be used and no building shall be erected or used for one of the following purposes unless approved by the Planning Commission pursuant to the procedures and guidelines outlined in Sections 1148.03 through 1148.10:
…
  (g)   Commercial, recreational or amusement development for temporary, seasonal periods only.


Appellants argue that, because the amphitheater project includes permanent buildings, including construction of permanent seating for over 5,000 people, the premises will not be used for temporary or seasonal periods only, as required for a conditional use. In response, appellees argue "seasonal use," as referenced in the code, pertains to the

underlying use of any buildings or structures erected on the property and does not equal a ban on permanent construction if the purpose of the structure is seasonal in nature.

{¶ 56} In affirming the decision of the city council, the trial court noted that any permanent structure built for the amphitheater "would not appear to run afoul of the City Code if the Amphitheater itself is temporary or seasonal[,]" considering Sections 1139A.03 and 1139B.03 in their entirety "along with other permitted uses[.]" The trial court further noted that the planning commission recommended approval. At the evidentiary hearing, moreover, testimony demonstrated that the permanent structures were permitted on the property under current zoning, without a conditional use permit, and it was the *use* as a temporary and/or seasonal, outdoor amphitheater that necessitated a conditional use permit. Considering the applicable city code and the evidence, the trial court determined the proposed *use* of the property was a valid conditional use.

   2.  **The record supported the trial court's determination that the council properly considered the Criteria under the city's code.**

{¶ 57} Next, appellants argue that the criteria for a conditional use permit were not satisfied as council lacked evidence as to each of the criteria to support approval of Ordinance 10-22. Section 1148.05 of the city's code lists criteria to consider in considering special uses, as follows:

   **1148.05  CRITERIA.**
      The following criteria shall be used in considering a special use
   application by the Planning Commission and Council:
      (a)   The special use is necessary or desirable for the public convenience
   at that location.
      (b)   The special use is so designed, located and proposed to be operated
   that the public health, safety and welfare will be protected.

22

(c)   The special use will not cause substantial injury to the value of other property in the neighborhood in which it is to be located.

(d)   The special use conforms, with the exception of planned developments, to the applicable regulations of the district in which it is to be located, including yard and height restrictions, and also conforms to the requirements for off-street parking and loading facilities as set forth in Section 1145.05.

{¶ 58} Appellants' challenge regarding criteria is essentially a challenge to the credibility of the evidence considered by council in making its factual determinations. Regarding the "necessary and desirable" criteria, appellants argue that the amphitheater is not necessary or desirable because council did not consider the public in discussion. Instead, appellants argue that council addressed the matter as a "land use decision" and considered tax revenue and adding private suites without specifically referencing necessity or desirability for the public convenience.

{¶ 59} Appellants also argue that the amphitheater project was not planned with public health, safety, and welfare considerations based on appellants' opinion that the amphitheater project was contrary to the goals set forth in the city's comprehensive plan. Appellants discount the evidence presented to city council as flawed and therefore not credible, with criticism of the sound study and the traffic report prepared for council's consideration.

{¶ 60} Next, appellants argue that the amphitheater project will cause substantial injury to neighboring properties by causing property values to drop, citing their own witness testimony regarding potential loss in property value. Appellants argue that, because appellees did not present evidence of potential effects on property values,

23

council failed to consider this criterion at all. As a result, appellants argue the lack of evidence demonstrating "the special use will not cause substantial injury" to property values, standing alone, required rejection of the appellees' application.

{¶ 61} Finally, appellants argue that council did not consider parking, because the proposal regarding amphitheater parking was inexact and based on unreliable data. Appellants contend that requirements for off-street parking must be supported by evidence showing the exact location of parking on the property. Additionally, appellants argue that parking must accommodate capacity crowds, questioning the calculation for parking based on 2.5 people per vehicle.

{¶ 62} In response to this challenge related to the criteria, appellees argue that the criteria are a list of factors to be considered, and not a list of necessary elements that must be demonstrated to fully comply with the city's code. Regardless, appellees argue that the criteria were fully considered by council, as demonstrated by the record. Appellees further questioned appellants' evidence on property values, noting the speculative nature of this evidence, and noted that appellants failed to provide their own reports or evidence to contradict evidence in the record that supported a conditional use permit.

{¶ 63} In affirming the decision of the city council, the trial court noted the evidence considered by council, and found the preponderance of reliable, probative, and substantial evidence supported council's decision. The trial court found the city's comprehensive plan "could reasonably be determined to show public desire for the Amphitheatre for the sake of economic development and marketing of the city."

24

Additionally, the trial court noted the studies performed assessing health, safety, and welfare concerns and the discretion of council to weigh this evidence against citizen concerns. As to property values, the trial court deemed appellants' evidence speculative, and determined council was within its discretion to weigh the speculative evidence against the noise study that determined noise would not harmfully impact neighboring homes. Finally, as to the parking requirements, the trial court noted the numerous parking options, including those proposed in the traffic study, as well as the additional conditions placed by council to limit capacity to ensure compliance with parking requirements. The trial court found that appellee considered "a plethora of evidence" along with the legal requirements and "exercised proper judgment" in approving Ordinance 10-22.

3. **We are limited to reviewing whether the lower court's decision is supported by reliable, probative, and substantial evidence, and may not weigh the evidence or determine credibility of the evidence.**

{¶ 64} In challenging the trial court's finding, appellants challenge the weight and credibility of the evidence considered by the council. However, our review is limited to questions of law. *Shelly Materials, Inc. v. City of Streetsboro Planning and Zoning Commission,* 2019-Ohio-4499, ¶ 17. "While the court of common pleas is required to examine the evidence, the court of appeals may not weigh the evidence." *Id.,* citing *Independence v. Office of the Cuyahoga Cty. Executive*, 2014-Ohio-4650, ¶ 14.

{¶ 65} Here, the record demonstrates that the trial court examined the evidence and found a preponderance of reliable, probative, and substantial evidence supported the council's decision. "Apart from deciding purely legal issues, the court of appeals can

25

determine whether the court of common pleas abused its discretion, which in this context means reviewing whether the lower court abused its discretion in deciding that an administrative order was or was not supported by reliable, probative, and substantial evidence." *Id.,* citing *Boice v. Ottawa Hills,* 2013-Ohio-4769, ¶ 7, citing *Kisil,* 12 Ohio St.3d at 34. Upon thorough review of the record, we find no abuse of discretion.

{¶ 66} Because the trial court did not abuse its discretion in finding Ordinance 10-22 was supported by reliable, probative, and substantial evidence, we find appellants' first and third assignments of error not well-taken.

### C. The record supports the trial court's findings regarding appellants' procedural challenge to passage of Ordinance 10-22.

{¶ 67} In their second assignment of error, appellants' challenge the validity of the vote in favor of passing Ordinance 10-22, arguing the council meeting held on November 28, 2022, was a special meeting, and pursuant to the city charter, required five votes to pass the ordinance. The council passed Ordinance 10-22 at the November 28, 2022 meeting, and with a vote of four in favor, two opposed, and one abstention. Pursuant to the city's charter, Section 3.10, the council first "presented [Ordinance 10-22] and distinctly read by title only" at three separate council meetings, and Ordinance 10-22 became effective thirty days after approval.

{¶ 68} As provided by the city's charter, Section 3.13, special meetings are called by a vote of council or by the clerk of council upon written request of the mayor, vice-mayor, or any three members of council, and notice of a special meeting must be personally served on council members and the mayor at least 24 hours prior to the

26

meeting, unless service is waived in writing. That section also requires public notice of all special meetings, with the notice identifying the "subject or subjects to be considered by Council." Finally, Section 3.13 requires special meetings to be held at council chambers. The council must have at least five affirmative votes to pass any measure acted upon at a special meeting, as opposed to a majority vote at a regular meeting.

{¶ 69} In arguing the November 28, 2022 meeting was a special meeting, requiring five votes, appellants rely on the printed minutes, calling the meeting a "special meeting." Appellants also argue that the charter required regular meetings to convene at council chambers, but the meeting was held at the school. Therefore, appellants argue, the trial court abused its discretion in determining the meeting was a regular council meeting with a majority vote required instead of at least five votes in favor of passing Ordinance 10-22.

{¶ 70} The trial court rejected this argument, noting the meeting was convened according to the council's regular schedule and notice, without satisfying any of the requirements for holding special meetings. The trial court also noted that the charter also required special meetings to be "held at Council Chambers," determining that the location was not determinative as to the type of meeting. After reviewing the record, including the testimony admitted at the evidentiary hearing, the court found the November 28, 2022 meeting was a regularly scheduled, general meeting, held in a special location, with the label "special meeting" having no legal significance for purposes of challenging the validity of Ordinance 10-22.

27

**{¶ 71}** Based on the record, we find no abuse of discretion by the trial court in reaching this conclusion. The record contained a preponderance of reliable, probative, and substantial evidence to support the trial court's finding that the November 28, 2022 meeting was a regularly scheduled council meeting, held at the school to accommodate the number in attendance. Appellants' second assignment of error, accordingly, is found not well-taken.

## V. Conclusion

**{¶ 72}** Based on the foregoing, we affirm the judgment of the Lucas County Court of Common pleas.  Appellants are ordered to pay the costs of the appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.                     _____
                                                          JUDGE
Gene A. Zmuda, J.

                                                   _____
Charles E. Sulek, P.J.                                JUDGE
CONCUR.

                                                   _____
                                                          JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.